UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

R{\scriptsize ANDALL} C{\scriptsize URTIS} W{\scriptsize OTRING},

       Plaintiff,                               Hon. Ellen S. Carmody

v.                                                     Case No. 1:08-cv-00477

P{\scriptsize RICE} H{\scriptsize ENEVELD} C{\scriptsize OOPER} D{\scriptsize E}W{\scriptsize ITT}
& L{\scriptsize ITTON}, LLP, et al.,

       Defendants.
_____/

## OPINION

This matter is before the court on Defendants' Motion for Summary Judgment (Dkt. 130). Only one claim of negligence remains in Plaintiff's First Amended Complaint, specifically that defendants committed legal malpractice by failing to know that Lueck was liable as an infringer pursuant to 35 U.S.C. § 271(b) and/or to name him in the Smittybilt complaint (Court's Order and Judgment, Dkt. 52, citing ¶¶ 40.C and D of the First Amended Complaint). Discovery is now closed and defendant moves for summary judgment on plaintiff's only remaining claim.

## STATEMENT OF FACTS

The court adopts for the most part defendants' statement of facts as consistent with plaintiff's pleadings. The court also largely adopts portions of the defendants' analysis as consistent with its own.

**The Parties**

Plaintiff owns United States Letters Patent 5,368,210 (the "'210 Patent") for an invention entitled the "Cargo Storage Apparatus." Defendant Price, Heneveld, Cooper, DeWitt & Litton, LLP ("Price Heneveld") "provides patent, trademark and copyright legal services, including preparation, prosecution, counsel and litigation." Defendant Steven L. Underwood ("Underwood") is a Price Heneveld partner, "a member of the State Bar of Michigan, and admitted to practice before the U.S. District Courts of the Eastern and Western Districts of Michigan, and he is also registered to practice before the U.S. Patent and Trademark Office." Defendant Gunther J. Evanina ("Evanina") is a Price Heneveld partner, "a member of the State Bar of Michigan, and is registered to practice before the U.S. Patent and Trademark Office." (First Amended Complaint ("FAC"), Dkt. 42, ¶¶ 2, 4, 9-10.)

**Plaintiff Retains Price Heneveld**

In July 2005, plaintiff contacted Price Heneveld about potential claims against Smittybilt Automotive Group, Inc. ("Smittybilt") for infringement of the '210 Patent. Plaintiff signed an Engagement Agreement (Exh. 2 to FAC) with Price Heneveld on July 21, 2005. In an August 4, 2005 letter (Exh. 3 to FAC), Gunther Evanina provided to plaintiff an opinion, which concluded that "the '210 patent claims were valid and enforceable, and literally infringed by the activities of Smittybilt, such that filing a Complaint for patent infringement was appropriate." (FAC, ¶ 16.)

**Defendants File Suit**

According to plaintiff's allegations in his First Amended Complaint (Dkt. 42), from the beginning he wanted his patent infringement claim to focus on recovering damages for lost sales, past and present. On July 13, 2005, he notified Mr. Evanina that he calculated his past lost sales (not profits) to be $56,250. The patent infringement claim seemed to plaintiff to be "a fairly

2

straightforward matter involving Smittybilt's use of the '210 patent, especially where Lueck . . . then-current president of Smittybilt – had full knowledge of the '210 patent[.]" (FAC, ¶¶ 12-13.)

On August 24, 2005, Price Heneveld filed in this court a complaint and demand for jury trial on behalf of plaintiff and against Smittybilt only ("Smittybilt complaint"), "where it was given File No. 1:05-CV-570 and assigned to the Hon. Gordon J. Quist, U.S. District Judge." Consistent with the recitals section of the Engagement Agreement (Exh. 2 to FAC, p. 1), suit was filed only against Smittybilt.

**Plaintiff Alleges Price Heneveld Was Directed To File Suit Against Both Smittybilt and Lueck**

Consistent with plaintiff's "intent . . . to file a Complaint for relief of [his] cause of action without immediate service and attempt to reasonably resolve the instant dispute without further litigation" (Engagement Agreement, p. 1, § 2.01), on August 25, 2005, Mr. Underwood sent a demand letter, with a courtesy copy of the complaint, to Smittybilt. According to plaintiff's allegations, when no response was forthcoming, he (and his mother and stepfather) met with Mr. Underwood and Mr. Evanina. At that meeting, according to plaintiff, "Underwood suggested [and everyone unanimously agreed] that we would go after **both** Smittybilt and Lueck in the lawsuit. In addition, it was discussed and decided that Underwood would re-send by certified mail his August 24, 2005 letter to Lueck – which Underwood did on September 15, 2005[.]" (FAC, ¶ 19 (brackets and emphasis in original)).

**Price Heneveld Obtains a Judgment For Plaintiff For More Than Plaintiff's Actual Reported Damages**

Smittybilt did not comply with the deadlines in the letters and, on "November 1, 2005, Smittybilt [**only**] was served with the Summons and Complaint **in California**." (FAC, ¶ 21 (brackets and emphasis in original).) Smittybilt failed to answer the complaint. On December 15, 2005, Price

3

Heneveld filed a motion for default judgment against Smittybilt. Plaintiff's declaration supported the motion. (FAC, Exhs. 8 and 9, respectively.)

In his declaration, plaintiff declared under penalty of perjury that Smittybilt sold 1859 units that infringed plaintiff's '210 patent; that plaintiff's lost-profit-per-unit was $15; and that plaintiff's lost profits were $27,885. (FAC, Exh. 9, ¶¶ 7-8.) Plaintiff also declared that he incurred attorney fees of $14,785.89 and costs of $503.89. (*Id.*, ¶¶ 10-11.) Thus, plaintiff declared under penalty of perjury that his damages totaled $43,174.78.

In the Motion, Price Heneveld argued for not only those damages, but also for treble plaintiff's lost-profit damages of $27,885 ($83,655) and for pre-judgment interest of $6,254.26. (FAC, Exh. 8.)

> On January 31, 2006, District Judge Quist entered an Order and Judgment against Smittybilt, awarding a total of $89,678.35 [for lost profits, pre-Complaint interest, post-Complaint interest and costs] and enjoining Smittybilt from infringing on the '210 Patent. . . .
>
> * * *
>
> On April 5, 2006, District Judge Quist granted Underwood's Motion for Entry of Amended Order and Judgment, and entered an Amended Order and Judgment awarding Plaintiff attorney fees in the amount of $7,925.

(FAC, ¶¶ 26 and 29 (brackets in original).) Thus, while plaintiff declared that his damages totaled $43,174.78, a total judgment entered in his favor for $93,603.35.

**Plaintiff Says He Did Not Know Lueck Was Not Named**

According to plaintiff, despite (1) his insistence in September 2005 that defendants do so and (2) his above-discussed declaration filed with this court, he did not learn that Lueck had not been named in or added to the Smittybilt lawsuit:

> until July of 2006 [when, as a judgment creditor of Smittybilt, he appeared In Pro Per in the United States District Court for the Northern District of Illinois, Case No. 06cv2789, seeking an assignment of accounts receivables owed to Smittybilt by J.C. Whitney, a national automotive retail catalog].

(FAC, ¶ 20 (brackets in original).)

Also according to plaintiff, when in July 2006 plaintiff asked Mr. Underwood why Lueck was not named in or added to the Smittybilt lawsuit, Mr. Underwood suggested to plaintiff that plaintiff could sue Lueck. On July 7, 2006, after plaintiff requested his entire file, Mr. Underwood allegedly repeated that advice. (FAC, ¶¶ 32, 35, and 36.) Instead, plaintiff filed this lawsuit.

**Plaintiff Alleges Defendants Are At Fault For the Judgment Being Uncollectible**

On December 5, 2005, after the Smittybilt complaint was filed, but before the above-discussed Order and Judgments entered, Textron Financial Corporation ("Textron") perfected a lien and secured all assets of Smittybilt and Lueck. (FAC, ¶ 25.A.) Textron sold Smittybilt's assets, which netted $2,000,000 less than the $10,000,000 owed to Textron. (*Id.*, ¶¶ 30 and 31.) According to plaintiff, "[b]ut for the professional negligence/malpractice of the Defendants, Plaintiff could have and would have received the $89,678.35 awarded . . . ; instead, Federal District Judge Quist's Order and Judgment against Smittybilt only was left unsatisfied, uncollectible, and essentially worthless." (*Id.*, ¶ 42.)

**Plaintiff's Original Claims of Malpractice**

According to plaintiff's original complaint (Dkt. 1, Exh. A), defendants were professionally negligent in five ways. In lieu of answering those allegations of malpractice, defendants moved to dismiss the first four under Fed. R. Civ. P. 12(b)(6), and moved to dismiss the fifth under Fed. R. Civ. P. 56 (Dkt. Nos. 25, 26, and 31). On September 23, 2008, the court heard oral arguments on

5

defendants' motion. During oral argument, plaintiff conceded that his first and fifth claims of negligence were without merit.

**Plaintiff's Amended Complaint**

Following oral argument, the court issued an Order (Dkt. 34) allowing plaintiff until January 9, 2009 to (1) "submit any affidavits, documents or other materials in opposition to Defendants' motion" and (2) "move for leave to amend his complaint." Plaintiff did both (Dkt. Nos. 35-39). On January 15, 2009, plaintiff and defendants stipulated (Dkt. 40), and the court subsequently entered an Order (Dkt. 41), that (1) plaintiff's first amended complaint (Dkt. 38) was deemed filed as of January 23, 2009, and (2) defendants would have 20 days, by February 12, 2009, to re-file their motion to dismiss as to the amended complaint.

In his first amended complaint, plaintiff alleges that defendants committed malpractice in three ways. On February 12, 2009, defendants timely moved to dismiss all three counts of the first amended complaint under Fed. R. Civ. P. 12(b)(6). In its opinion dated July 24, 2009, the court dismissed plaintiff's claim of legal malpractice against defendants that they had a duty to investigate and determine the actual units sold that infringed the '210 patent, and further found that plaintiff suffered no damages for the defendants' failure to determine the actual units sold. (Dkt. 51 at pp. 8-9). The court further dismissed pursuant to Fed. R. Civ. P. 12(b)(6) plaintiff's third count, finding that defendants had no duty or right to conduct pre-filing discovery to determine if Smittybilt or Lueck were collectible. The court further found that plaintiff had failed to allege that any such failure to conduct a pre-filing investigation was a proximate cause of plaintiff's alleged harm. (Dkt. 51 at pp. 10-12).

The court with grave reservations concluded that plaintiff's second allegation of negligence, regarding defendants' failure to name Lueck as an infringer pursuant to 35 U.S.C. § 271(b), arguably stated a claim on which discovery should be permitted. Following the close of discovery, defendants now move pursuant to Fed. R. Civ. P. 56 for summary judgment on plaintiff's remaining negligence claim: that defendants committed malpractice by any failure to know that "Lueck was liable as an infringer pursuant to 35 U.S.C. § 271(b)" or to name him in the Smittybilt complaint. (FAC at ¶ 40.C and D.). The court agrees and will grant summary judgment for the defendants on plaintiff's remaining claim.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

Defendants take the position that the case should be dismissed under Fed. R. Civ. P. 56 because there is no genuine issue as to any material fact. They maintain that as venue in this court is improper against Lueck, and because plaintiff lacked a good faith basis to allege that Lueck "actively induced" Smittybilt's infringement or that he was subject to "personal jurisdiction" in Michigan, defendants did not have any duty to name Lueck. They also maintain that plaintiff reviewed documents during the Smittybilt lawsuit including his sworn declaration in support of a default judgment which clearly identified that the suit was against Smittybilt only. Defendants further aver that is it undisputed that plaintiff knew he could, but chose not to, sue Lueck after the Smittybilt lawsuit to recover the very damages that he now seeks to recover from defendants. Defendants assert that it is undisputed that plaintiff has since lost the opportunity to sue Lueck and that he thus failed to mitigate his damages as a matter of law. Finally, defendants maintain that the decision not to name Lueck falls squarely under the protection of the "Attorney Judgment Rule." The court agrees with every one of these arguments.

**1.    Venue and Personal Jurisdiction Against Lueck in the Western District of Michigan**

At the time the Smittybilt complaint was filed, it is clear that defendants had no evidence that either personal jurisdiction or venue was proper in the Western District of Michigan. (Defendants' Brief (Dkt. 131) at pp. 5-6).[1] Lueck's own deposition testimony taken in this lawsuit supports that both venue and personal jurisdiction were problematic. (Lueck Dep., Exh. 24 to Defendants' Brief (Dkt. 131), p. 17, line 20 - p.18, line 8). Plaintiff has introduced no contrary evidence.

---

[1] Discovery was never undertaken in the Smittybilt lawsuit because a default judgment was entered against Smittybilt for treble damages before such discovery even commenced.

**2.  Defendants Lacked a Good Faith Basis to Allege Lueck Actively Induced Smittybilt's Infringement**

Plaintiff relies on the fact that Dean Lueck allegedly had active knowledge of the '210 patent sufficient to constitute a good faith allegation that Lueck actively induced Smittybilt's infringement. Defendants' expert explains in his affidavit why this is not the case. (Affidavit of Charles E. Burpee, Exh. 22 to Defendants' Brief (Dkt. 131) at ¶¶ 11, 12, 17 and 19). It is fatal to plaintiff's position that plaintiff's proffered expert, Robert J. Sayfie, agrees with Mr. Burpee. (See Exh. 23 to Defendants' Brief (Dkt. 131) at p. 38, line 9 - p.3 9, line 15, p. 42, lines 18-20.)

The only evidence regarding Lueck's intent and active inducement is his deposition in this case. There, he testified that he did not even recall plaintiff's product, and that Smittybilt sold thousands of products. (Lueck Dep., Exh. 24 to Defendants' Brief (Dkt. 131), p. 14, lines 14 - 22). Lueck vehemently denied intending or directing Smittybilt to infringe. (Id. at p. 43, line 18 - p. 44, line 1).

**3.  Plaintiff Had Actual or Constructive Knowledge That the Smittybilt Lawsuit Was Clearly Against Smittybilt Only**

According to plaintiff, during a September 15, 2005 roundtable meeting among defendants, plaintiff, and his mother and stepfather, Underwood suggested that plaintiff sue both Smittybilt and Lueck. (Plaintiff's Dep., Exh. 5 to Defendants' Brief (Dkt. 131), p. 75, line 18 - p. 86, line 16). According to defendant Underwood, the conversation was a bit different, to the effect that there was insufficient evidence to name Lueck at the time, but that discovery in the Smittybilt case may prove otherwise. (Underwood Dep., Exh 6 to Defendants' Brief (Dkt. 131), p. 28, line 6 - p. 33, line 22).

Whose version of events is correct is really irrelevant. It is undisputed that plaintiff subsequently reviewed numerous documents during the Smittybilt lawsuit which made clear that the

suit was against Smittybilt only. It is undisputed that plaintiff was sent numerous e-mails and other correspondence making it clear that Lueck had not been added to the lawsuit, notwithstanding plaintiff's allegations that there were conversations that he would be. For a listing of the various documents, see Defendants' Brief (Dkt. 131) at pp. 3-4.

### 4. Plaintiff Failed to Mitigate His Damages

After plaintiff terminated defendants' services in February 2006, he then attempted to collect on the Smittybilt judgment. It is beyond dispute that plaintiff had active knowledge that Lueck was not part of this judgment timely for him to have sued Lueck in a separate lawsuit. The court believes that plaintiff made a decision not to pursue an expensive lawsuit against an individual, likely uncollectible, in California. Instead, plaintiff pursued these defendants.

### 5. The Professional Judgment Rule

Michigan law defines the attorney standard of care to be the good faith and informed exercise of ordinary care, skill and diligence in providing legal services to a client. This widely accepted description does not seek to characterize acceptable levels of an attorney's professional judgment, which the courts have been resistant to quantify or second guess. Mere errors in judgment generally are not tantamount to malpractice. (*See, Symco v. Blake*, 448 Mich. 648, 532 N.W.2d 842, 846-7, (1995).) (See also Affidavit of Richard A. Glaser, Exh. 32 to Defendants' Brief (Dkt. 131), pp.1-2).

The undersigned finds the decision not to name Lueck in the underlying lawsuit against Smittybilt was not an error in professional judgment but rather the exercise of excellent professional judgment. First, Lueck could well have challenged the venue of the case in the Western District of Michigan; second, there is no evidence to suggest that the Western District of Michigan court could have exercised personal jurisdiction over Mr. Lueck; third, at the time the Smittybilt complaint was

filed, defendant lacked sufficient evidence, without discovery, to charge Lueck with inducement of infringement of plaintiff's patent by Smittybilt. Indeed, even after taking the deposition of Lueck in this action, there is no evidence that Lueck induced Smittybilt to violate plaintiff's patent rights. Fourth, damages asserted by plaintiff were relatively modest. To unnecessarily complicate a relatively straightforward case with relatively modest damages in the undersigned's opinion would have been poor professional judgment.

When defendants obtained relatively swiftly a default judgment against Smittybilt for treble damages as well as an injunction, the decision not to pursue Lueck was very reasonable, made probably for the very reason that plaintiff determined not to bring suit on his own behalf. Whether Lueck would have defended any such suit, whether evidence could have been uncovered to establish active inducement, or whether he could or would ever have paid any judgment obtained in any such suit is entirely speculative based on the sequence of events and common sense.

## **CONCLUSION**

Plaintiff's position is based on speculation and not fact. Thus defendants are entitled to summary judgment on plaintiff's remaining claim. Defendants' Motion for Summary Judgment (Dkt. 130) is **granted.** An order consistent with this opinion will enter.


Date: March 28, 2011                         /s/ Ellen S. Carmody
                                            ELLEN S. CARMODY
                                            United States Magistrate Judge